LILLIAN C. MARTIN v. THE BOARD OF CHOSEN FREE-
HOLDERS AND ANNA A. HOSP.

Submitted March 11, 1913—Decided October 27, 1913.

The matron of the Essex county penitentiary is the incumbent of an office.

On *certiorari* reviewing resolution of board of freeholders.

Before Justices GARRISON, SWAYZE and MINTURN.

For the plaintiff, *Alonzo Church.*

For the defendant, *Benjamin F. Jones.*

The opinion of the court was delivered by

MINTURN, J. The question presented by the reasons in this case is whether the plaintiff is the holder of an office. She was elected matron of the Essex county penitentiary on December 7th, 1908, for a term of two years, and she was again elected for a like term on December 5th, 1910; her husband, Samuel C. Martin, having been elected warden by the board of freeholders at the same intervals.

The general authority for such action is found in 3 *Comp. Stat., p.* 2953, by which the board of freeholders is directed and empowered "to appoint and hire some fit person to be

master of the workhouse," "and other·officers and servants if necessary."

At the November election in 1910 Essex county adopted the provisions of the so-called Strong act, as well as the Civil Service act. On the first of January, 1912, the new board of freeholders duly elected Anna A. Hosp, the wife of Ferdinand J. Hosp, the warden of the penitentiary, as matron for one year to succeed this plaintiff, whose term of two years had then expired. On January 6th, 1913, the said Anna A. Hosp was re-elected matron for a term of two years, her term running concurrently with that of her husband, the warden who was also reappointed.

The writ of *certiorari* brings up for review the legality of the last resolution, the plaintiff as incumbent contending that she is protected by the provisions of the Civil Service act from removal, excepting as therein provided.

This court was called upon to deal with another phase of the question *sub judice,* in *Hosp* v. *Martin,* 54 *Vroom* 299, involving the warden of the penitentiary. The case was decided upon a demurrer to an information in the nature of *quo warranto.* The learned Chief Justice there referred to the nature of an office, and considered it from the aspect of a statutory or a common law designation, and concluded that the wardenship of the penitentiary was an office. Section 6 of the Strong act (*Pamph. L.* 1902, *p.* 67), as amended by chapter 2577 of the laws of 1906, furnishes the authority for the board of freeholders to appoint the matron for the term of two years.

That section was held to be a constitutional enactment by the Court of Errors and Appeals in *Paterson* v. *Close,* 55 *Vroom* 319.

The conspicuous fact in the case is the matron is·elected by the board of freeholders in the,same manner as the warden, and both are elected for definite terms. If for the reasons advanced in *Hosp* v. *Martin, supra,* the warden is thereby constituted a public officer by parity of reasoning, the matron is in her sphere equally important, and occupies "a place in a governmental system created or recognized by

the law of the state, which either directly or by delegated
authority assigns to the incumbent thereof, the continuous
performance of certain permanent public duties." In the
rules governing the institution she is designated as the "head
of the female department of the penitentiary, and shall have
charge of the prisoners and property therein." Subject to
the authority of the stated committee, her authority upon
the female side of the prison seems to be plenary and within
her prescribed sphere is practically upon a par with that
exercised by the warden in the institution generally.

Her term of office begins with his, and the practice seems
to be, and with apparent reason and propriety, for the board
to elect the wife of the warden as matron, at the time of the
warden's election, and for a term of office coincident with his.
The importance of the segregation of female inmates in
penal institutions, in the legislative purview, is manifested
by the trend of legislation upon the subject.

In 1910 an act was passed providing for the appointment
of matrons in the county jails and defining their powers and
duties. *Pamph. L.* 1910, *p.* 155. In 1911 the legislature
dealt directly with the segregation of female from male pris-
oners in county jails and penitentiaries, and thus emphasized
and enjoined from the viewpoint of legislative public policy,
a condition of prison discipline and segregation requiring for
the welfare and reform of male and female inmates alike, a
general control and supervisory power of management which
generally accompanies an office, as distinguished from an
ordinary occupation or employment; and which may be char-
acterized and differentiated in the language of *Fredericks* v.
*Board of Health,* 53 *Vroom* 200, as the "continuous per-
formance of certain public duties."

In our judgment, therefore, the matron of the penitentiary
holds an office, and cannot be removed therefrom by *cer-
tiorari. Bumsted* v. *Blair,* 44 *Vroom* 378.

Although this difficulty is now remediable under section
23 of the New Practice act, we are unable to perceive how
an amendment which may be thus ordered to cover the exi-
gency will in fact meet the situation. An amendment of the

proceedings from *certiorari* to *quo warranto* cannot be of any efficacy to the plaintiff, since she is in possession of the office, and a judgment of ouster in her case would therefore be both useless and profitless. For these reasons a dismissal of the writ of *certiorari* is necessary and will be ordered.